FILED

NOV - 7 2003

LARRY W. _____, CLERK
CHARLESTON, SC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## BEAUFORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA for the use and benefit of RYAN INCORPORATED CENTRAL, | ) ) ) | CIVIL ACTION NO.: |
| and | ) ) | **9  03  3540  08** |
| RYAN INCORPORATED CENTRAL | ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HARTFORD FIRE INSURANCE COMPANY | ) ) | **COMPLAINT** (Jury Demand) |
| and | ) ) | |
| OVERSTREET ENGINEERING & CONSTRUCTION, INC. | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiffs United States of America for the use and benefit of Ryan Incorporated Central

and Ryan Incorporated Central ("Ryan"), by and through undersigned counsel, bring their

Complaint against Defendants Hartford Fire Insurance Company ("Hartford") and Overstreet

Engineering & Construction, Inc. ("Overstreet"), and allege as follows:

### PARTIES

1.      Plaintiff Ryan, a site work and excavation contractor, is a corporation duly

organized and existing pursuant to the laws of the State of Wisconsin with its principal place of

business in Janesville, Wisconsin.  At all times relevant herein, Ryan was authorized to do

business in the State of South Carolina.

2.      Defendant Overstreet is a Florida corporation with its principal place of business

in Pensacola, Florida.  Overstreet is not authorized to do business in South Carolina but does

transact business in this district.

{00557141.}

3.    Defendant Hartford is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  Hartford transacts business in this district.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over this action pursuant to 40 U.S.C. §§ 3131-3134, commonly known as the "Miller Act."  In addition, this court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, the parties being citizens of different states and the matters in controversy exceeding $75,000.  Moreover, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

5.    Pursuant to the Miller Act's venue provision, 40 U.S.C. § 3133(b)(3), venue is proper in this Court.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Ryan's claims occurred, or a substantial part of property that is the subject of this suit is situated in this district.

## BACKGROUND

6.    On or about September 13, 2001, the United States, acting through the Department of the Army, United States Army Corps of Engineers, Savannah District ("Corps") entered into contract number DACW21-01-C-0007 ("Contract") with Overstreet for disposal area improvements and weir replacement at Disposal 12A, Savannah Harbor, South Carolina ("Project").  The Project site is located in this district.

7.    The contract between the Corps and Overstreet exceeds $100,000 and involves the construction, alteration or repair of a public building or a public work of the Federal Government.  Therefore, in accordance with the Miller Act, Overstreet as principal, and Hartford as surety, executed a payment bond for the protection of all persons supplying labor and material in the prosecution of the work provided for in the Contract.  The penal sum of the bond is

$4,306,305.86. A copy of the payment bond is attached hereto as Exhibit A and is incorporated herein by reference.

8.     On or about November 12, 2001, Overstreet entered into Subcontract No. 901-C-01 ("Subcontract") with Ryan to perform certain earthwork for the Project. This work consisted of dewatering and maintaining the borrow harvesting area; excavating, hauling, and placement of fill to construct access ramps, dike embankment, and bird island embankments; placement of geotextile fabric and sand cushion; and fine grading and final clean-up. A copy of excerpts from the Subcontract are attached hereto as Exhibit B and are incorporated herein by reference.

9.     Ryan performed work on the Project through December 2002. Ryan fully performed all of its obligations under the Subcontract except where the same were waived, prevented, or excused by acts of Overstreet or the Corps.

10.    Overstreet and Hartford have failed to pay Ryan the sum $195,884.99 for base Subcontract work and labor and material furnished to the Project by Ryan. Overstreet has received payment from the Corps for some or all of the value of this base Subcontract work.

11.    Overstreet and Hartford have failed to pay Ryan the sum of $280,105.68 for labor and material furnished by Ryan in connection with Modification No. P00008 to the Contract.

12.    Overstreet and Hartford have failed to pay Ryan the sum of $95,069.03 for suspension of work costs incurred by Ryan for the period of January 1, 2003 through January 31, 2003.

13.    From March 15, 2002 through November 11, 2002 Ryan experienced the following impacts to its performance under the Subcontract on the Project: (1) increased costs; (2) additional work; (3) delayed performance; and (4) inefficiencies. These adverse impacts were the result of differing site conditions, defective Subcontract/Contract specifications, superior knowledge, and interference by Overstreet and the Corps. On June 2, 2003, Ryan

submitted a detailed request for equitable adjustment to Overstreet ("REA") pursuant to the Subcontract seeking recovery for these impacts. Overstreet and Hartford have failed to pay Ryan the sum of $2,273,126.00 for the impacts to Ryan's Subcontract performance described in the REA.

14.    A period in excess of ninety days has passed since the last work was performed on the Project by Ryan.

15.    A period of less than one year has elapsed since Ryan completed its work on the Project.

16.    The Subcontract, at Paragraph 7.4, provides that the prevailing party in any action to enforce any provisions of the agreement is entitled to reasonable attorneys' fees, costs, charges, and expenses.

## COUNT I
### (Breach of Contract)

17.    Ryan incorporates herein by reference the allegations contained in Paragraphs 1 through 16.

18.    Overstreet entered into a subcontract with Ryan for performance of certain work on the Project wherein Overstreet was obligated, among other things, to compensate Ryan for: (1) the value of labor and materials Ryan furnished to the Project in pursuing base Subcontract work; (2) the value of labor and materials Ryan furnished to the Project in pursuing Modification P00008 to the Contract; (3) costs incurred by Ryan related to the suspension of work for the period of January 1, 2003 through January 31, 2003; and (4) the value of labor and materials Ryan furnished to the Project as a result of delays, increased costs, additional work, and inefficiencies experienced by Ryan resulting from impacts to Ryan's performance of work on the Project described in the REA.

19.    Ryan furnished labor and material pursuant to the terms of the above-referenced subcontract in a timely and workmanlike manner.

20.    Ryan duly invoiced Overstreet for the value of labor and materials supplied pursuant to the Subcontract, or has otherwise demanded payment from Overstreet for: (1) costs incurred by Ryan in pursuing Modification P00008 to the Contract; (2) costs incurred by Ryan related to the suspension of work period of January 1, 2003 though January 31, 2003; and (3) delays, increased costs, additional work, and inefficiencies experienced by Ryan as result of impacts to Ryan's performance of work on the Project described in the REA.

21.    Overstreet has failed, despite demand and without just cause, to pay the sum of $2,844,185.70 which amount is currently due and payable to Ryan pursuant to the Subcontract.

22.    Overstreet's failure to make the payment of  $2,844,185.70 is a breach of its Subcontract with Ryan.

23.    As a direct and proximate result of Overstreet's breach, Ryan has been damaged in the total amount of $2,844,185.70, for the amount currently due and payable to Ryan under the Subcontract plus reasonable attorneys' fees, costs, charges, and expenses.

24.    Pursuant to Article 15 of the Subcontract, Ryan and Overstreet agreed to arbitrate all claims, disputes and other matters in question arising out of, or relating to, the Subcontract, or the breach thereof.  In filing this action against Overstreet, Ryan expressly reserves, and does not waive, its right under the Subcontract and applicable law to demand arbitration of these claims. Ryan is agreeable to entry of an order by this Court staying proceedings on this Count pending arbitration.

## COUNT II
### (Miller Act Payment Bond Claim)

25.    Ryan incorporates herein by reference the allegations contained in Paragraphs 1 through 24.

{00557141.}

26.    Ryan is a proper claimant under the Payment Bond issued by Hartford for the Project.

27.    Ryan has satisfied all requirements for assertion of this claim and all conditions precedent to bringing this cause of action.

28.    The labor and materials supplied to the Project by Ryan were furnished more than 90 days prior to the bringing of this suit.

29.    Ryan has filed this action within the time required by the Miller Act plus reasonable attorneys' fees, costs, charges, and expenses.

30.    Pursuant to the terms of the Payment Bond and the Miller Act, Hartford is liable to Ryan for the $2,844,185.70 currently due Ryan plus pre-judgment interest.

WHEREFORE, Plaintiffs pray for judgment as follows:

A.    Against Defendant Overstreet Engineering & Construction, Inc. in the amount of $2,844,185.70 plus pre and post-judgment interest, attorneys' fees, costs, charges, and expenses and court costs pursuant to Count I of this Complaint;

B.    Against Defendant Hartford Fire Insurance Company in the amount of $2,844,185.70 plus pre and post-judgment interest, attorneys' fees, costs, charges, and expenses and court costs pursuant to Count II of this Complaint; and

C.    For such other and further relief as the Court may deem just and appropriate.

## JURY DEMAND

Plaintiffs pray for trial by Jury on all issues stated herein.

Respectfully submitted,

C. Allen Gibson Jr. (ID#  2088)
Mark A. Crawford (ID# 7532)
Buist Moore Smyth McGee P.A.
5 Exchange Street
Charleston, SC 29401
(843) 722-3400

Attorney for Ryan Incorporated Central

for : Michael A. Gatje
Hal J. Perloff
Wickwire Gavin, P.C.
8100 Boone Boulevard, Suite 700
Vienna, VA 22182
(703) 790-8750

Of Counsel for Ryan Incorporated Central

**DATED** this 7th day of November 2003.

01/22/03  14:34  ☎608 754 2293        RYAN INC CENTRAL              912 652 6059    @003/008
JAN-22-2003  13:05    \CESAS-CT-P                                                    P.02/07

**PAYMENT BOND**
(See instructions on next page)

| | DATE BOND EXECUTED (must be same or contract) | | |
| | 9/13/2001 | | 9000-0045 |

21BCSAU6276

Public reporting burden for this collection of information is estimated to average 25 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the FAR Secretariat (VRS), Office of Federal Acquisition Policy, GSA, Washington, D.C. 20503; and to the Office of Management and Budget, Paperwork Reduction (9000-0045) Washington, D.C. 20503

| PRINCIPAL (Legal name and business address) | TYPE OF ORGANIZATION ("X" one) |
|---|---|

OVERSTREET ENGINEERING & CONSTRUCTION, INC.
4220 N. DAVIS HWY., BLDG. B
PENSACOLA, FL 32503

☐ INDIVIDUAL      ☐ PARTNERSHIP
☐ JOINT VENTURE   ☒ CORPORATION

STATE OF INCORPORATION
FLORIDA

SURETY(ies) (Name(s) and business address(es))

HARTFORD FIRE INSURANCE COMPANY
HARTFORD PLAZA
HARTFORD, CT 06115

**PENAL SUM OF BOND**

| MILLION(S) | THOUSAND(S) | HUNDRED(S) | CENTS |
|---|---|---|---|
| 004 | 306 | 035 | 16 |

| CONTRACT DATE | CONTRACT NO. DACW21-01-C-0007 |
|---|---|
| 9/13/2001 | Disposal Area Improvements and Weir Replacement Disposal Area 12A, Savannah Harbor |

**OBLIGATION:**

We, the Principal and Surety(ies) are firmly bound to the United States of America (hereinafter called the Government) in the above penal sum. For payment of the penal sum, we bind ourselves, our heirs, executors, administrators, and successors, jointly and severally. However, where the Sureties are corporations acting as co-sureties, we, the Sureties, bind ourselves in such sum "jointly and severally" as well as "severally" only for the purpose of allowing a joint action or actions against any or all of us. For all other purposes, each Surety binds itself, jointly and severally with the Principal, for the payment of the sum shown opposite the name of the Surety. If no limit of liability is indicated, the limit of liability is the full amount of the penal sum.

**CONDITIONS:**

The above obligation is void if the Principal promptly makes payment to all persons having a direct relationship with the principal or a subcontractor of the principal for furnishing labor, material or both in the prosecution of the work provided for in the contract identified above, and any authorized modifications of the contract that subsequently are made. Notice of those modifications to the Surety(IES) are waived.

**WITNESS:**

The Principal and Surety(ies) executed this payment bond and affixed their seals on the above date.

Legal Sufficiency
Technical Specs. & Drawings
Not Reviewed.

_signature_ 10-02-01
Atty.                          (Date)
**Office of Counsel**

| OVERSTREET ENGINEERING & CONSTRUCTION, INC. | | **PRINCIPAL** | | |
|---|---|---|---|---|
| SIGNATURE(S) | 1. | 2. (Seal) | 3. (Seal) | Corporate Seal |
| NAME(S) & TITLE(S) (Typed) | 1. Benjamin J. Overstreet, President | 2. | 3. | |

| | **INDIVIDUAL SURETY(IES)** | |
|---|---|---|
| SIGNATURE(S) | 1. (Seal) | 2. (Seal) |
| NAME(S) (Typed) | 1. | 2. |

| | | HARTFORD FIRE INSURANCE COMPANY | | **CORPORATE SURETY(IES)** | | |
|---|---|---|---|---|---|---|
| SURETY A | NAME & ADDRESS | HARTFORD PLAZA HARTFORD, CT 06115 | | STATE OF INC. CONNECTICUT | LIABILITY LIMIT $ | |
| | SIGNATURE(S) | 1. | | 2. | | **EXHIBIT A** |
| | NAME(S) & TITLE(S) (Typed) | 1. R. E. DANIELS, ATTORNEY-IN-FACT | | 2. | | |

NSN 7540-01-152-8661
Previous edition not usable

EXPIRATION DATE: 9-30-95    25-205

STANDARD FORM 25-A (REV. 1-90)
Prescribed by GSA - FAR (48 CFR) 58.228(c)

01/22/03   14:35   ☎808 754 2293      RYAN INC CENTRAL                    ⌷004/008
JAN-22-2003  13:05      CESAS-CT-P                         912 652 6059      P.03/07

CORPORATE SURETY(IES) (Continued)

| | | | STATE OF INC. | LIABILITY LIMIT | |
|---|---|---|---|---|---|
| **SURETY B** | NAME & ADDRESS | | | $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| **SURETY C** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| **SURETY D** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| **SURETY E** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| **SURETY F** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |
| **SURETY G** | NAME & ADDRESS | | STATE OF INC. | LIABILITY LIMIT $ | Corporate |
| | SIGNATURE(S) | 1. | 2. | | |
| | NAME(S) & TITLE(S) (Typed) | 1. | 2. | | Seal |

### INSTRUCTIONS

1. This form, for the protection of persons supplying labor and material, is used when a payment bond is required under the Act of August 24, 1935, 49 Stat. 793 (40 U.S.C. 270a–270-e). Any deviation from this form will require the written approval of the Administrator of General Services.

2. Insert the full legal name and business address of the Principal in the space designated "Principal" on the face of the form. An authorized person shall sign the bond. Any person signing in a representative capacity (e.g., an attorney-in-fact) must furnish evidence of authority if that representative is not a member of the firm, partnership, or joint venture, or an officer of the corporation involved.

3. (a) Corporations executing the bond as sureties must appear on the Department of the Treasury's list of approved sureties and must act within the limitation listed therein. Where more than one corporate surety is involved, their names and addresses shall appear in the spaces (Surety A, Surety B, etc.) headed "CORPORATE SURETY(IES)." In the space designated "SURETY(IES)"

on the face of the form, insert only the letter identification of the sureties.

(b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28) for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning their financial capability.

4. Corporations executing the bond shall affix their corporate seals. Individuals shall execute the bond opposite the word "Corporate Seal", and shall affix an adhesive seal if executed in Maine, New Hampshire, or any other jurisdiction requiring adhesive seals.

5. Type the name and title of each person signing this bond in the space provided.

U.S. Government Printing Office: 1993 - 342 - 199/60127                    STANDARD FORM 25-A (REV. 1-90) BACK

| X | Hartford Fire Insurance Company | Twin City Fire Insurance Company | |
| X | Hartford Casualty Insurance Company | Hartford Insurance Company of Illinois | |
| X | Hartford Accident and Indemnity Company | Hartford Insurance Company of the Midwest | |
| | Hartford Underwriters Insurance Company | Hartford Insurance Company of the Southeast | |

KNOW ALL PERSONS BY THESE PRESENTS THAT the *Hartford Fire Insurance Company, Hartford Accident and Indemnity Company* and *Hartford Underwriters Insurance Company,* corporations duly organized under the laws of the State of Connecticut; *Hartford Insurance Company of Illinois,* a corporation duly organized under the laws of the State of Illinois; *Hartford Casualty Insurance Company, Twin City Fire Insurance Company* and *Hartford Insurance Company of the Midwest,* corporations duly organized under the laws of the State of Indiana; and *Hartford Insurance Company of the Southeast,* a corporation duly organized under the laws of the State of Florida; having their home office in Hartford, Connecticut. (hereinafter collectively referred to as the "Companies") do hereby make, constitute and appoint, *up to the amount of unlimited:*

> *R.E. Daniels, Anita W. Rosenau of Pensacola, FL; William P. Hopkins, Jr. of Atlanta, GA;*
> *Mark W. Edwards, II, Jeffrey M. Wilson, Ronald B. Gladrosich of Birmingham, AL*

their true and lawful Attorney(s)-in-Fact, each in their separate capacity if more than one is named above, to sign its name as surety(ies) only as delineated above by ☒, and to execute, seal and acknowledge any and all bonds, undertakings, contracts and other written instruments in the nature thereof, on behalf of the Companies in their business of guaranteeing the fidelity of persons, guaranteeing the performance of contracts and executing or guaranteeing bonds and undertakings required or permitted in any actions or proceedings allowed by law.

In Witness Whereof, and as authorized by a Resolution of the Board of Directors of the Companies on September 12th, 2000, the Companies have caused these presents to be signed by its Assistant Vice President and its corporate seals to be hereto affixed, duly attested by its Assistant Secretary. Further, pursuant to Resolution of the Board of Directors of the Companies, the Companies hereby unambiguously affirm that they are and will be bound by any mechanically applied signatures applied to this Power of Attorney.



Paul A. Bergenholtz, Assistant Secretary                    John P. Hyland, Assistant Vice President

STATE OF CONNECTICUT
                          } ss.  Hartford
COUNTY OF HARTFORD

On this 19th day of September, 2000, before me personally came John P. Hyland, to me known, who being by me duly sworn, did depose and say: that he resides in the County of Hartford, State of Connecticut; that he is the Assistant Vice President of the Companies, the corporations described in and which executed the above instrument; that he knows the seals of the said corporations; that the seals affixed to the said instrument are such corporate seals; that they were so affixed by authority of the Boards of Directors of said corporations and that he signed his name thereto by like authority.



CERTIFICATE                                    Jean H. Wozniak
                                               Notary Public
                                               My Commission Expires June 30, 2004

I, the undersigned, Assistant Vice President of the Companies, DO HEREBY CERTIFY that the above and foregoing is a true and correct copy of the Power of Attorney executed by said Companies, which is still in full force effective as of      September 13,  2001

Signed and sealed at the City of Hartford.



                                               Colleen Mastroianni, Assistant Vice President

01/22/03  14:36  ☎808 754 2293        RYAN INC CENTRAL                    912 652 6659    P.05/07
JAN-22-2003  13:06    CESAS-CT-P

Contract No. DACW21-01-C-0007
Overstreeet Engineering & Construction, Inc.

NOTE:

Contractor, if a corporation, should cause the following
certificate to be executed under its corporate seal, provided
that the same officer shall not execute both the contract and the
certificate.

CERTIFICATE

I, __MARY Z. OVERSTREET_____ certify that

I am __VICE PRESIDENT_____ of the corporation named as

Contractor herein, that __BENJAMIN J. OVERSTREET_____ who signed

this contract on behalf of the Contractor, was then _____

__PRESIDENT_____ of said corporation; that said contract

was duly signed for and in behalf of said corporation by

authority of its governing body, and is within the scope of its

corporate powers.

(Signature)                    (CORPORATE SEAL)



Associated General
Contractors of America
(AGC)



American Subcontractors
Association, Inc.
(ASA)



Associated
Specialty Contractors
(ASC)

# AGC/ASA/ASC
# STANDARD FORM CONSTRUCTION
# SUBCONTRACT

## SUBCONTRACT  NO. 901-C-01

### TABLE OF ARTICLES

1.   DEFINITION OF SUBCONTRACT TERMS
2.   SUBCONTRACT PRICE
3.   SUBCONTRACT DOCUMENTS
4.   SCOPE OF SUBCONTRACT WORK
5.   SURETY BONDING
6.   PERFORMANCE OF WORK
7.   SUBCONTRACT INTERPRETATION
8.   CONTRACTOR'S OBLIGATIONS
9.   SUBCONTRACTOR'S OBLIGATIONS
10.  LABOR RELATIONS
11.  INSURANCE
12.  INDEMNIFICATION
13.  CHANGES, CLAIMS AND DELAYS
14,  PAYMENT
15.  DISPUTE RESOLUTION
16.  RECOURSE BY CONTRACTOR
17   TERMINATION BY SUBCONTRACTOR



EXHIBIT
B



RECEIVED
NOV 1 4 2001
BY:

This Agreement has important legal and insurance consequences. Consultation with an attorney and insurance consultant is encouraged with respect to its completion or modification.

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT AGC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994,
The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

AGC/ASA/ASC
STANDARD FORM CONSTRUCTION SUBCONTRACT

This Subcontract is effective as of the first day of, November 01, 2001 by and between: **Overstreet Engineering & Construction Co., Inc. of 4220 N. Davis Highway, Bld.# B - Pensacola, Florida 32503** hereinafter referred to as the "Contractor" and **Ryan Incorporated"** located at **2700 East Racine St., Janesville, WI 53545** hereinafter referred to as the "Subcontractor."

WITNESSETH: The following terms and conditions are hereby mutually agreed to by and between the Contractor and the Subcontractor:

**ARTICLE 1**
**DEFINITION OF SUBCONTRACT TERMS**

PROJECT:  **Disposal Area 12A, Savannah Harbor, South Carolina**

OWNER: *(The term "Owner" as used in the Subcontract Documents shall mean the person or entity referred to above or the Owner's authorized representative.)*

US Army Corps of Engineers, Savannah District
P.O. Box 889
Savannah, GA 31402-0889
Contracting Officer: Colleen O'Keefe

CONTRACT: (Define Contract between Contractor and Owner. *The term "Contract" as used in the Subcontract Documents shall mean the Contract between the Contractor and Owner.)*

Contract No. DACW21-01-C-0007

SUBCONTRACT: The Subcontract is the entire and integrated agreement between the Contractor and the Subcontractor.

SUBCONTRACT AGREEMENT: The Subcontract Agreement is this standard form construction subcontract, identified as Subcontract Agreement No 901-C-01 which forms a part of the Subcontract Documents.

SUBCONTRACT WORK: (As more particularly described in Article 4)
Dewatering and maintaining borrow area, excavate borrow material and construct Dike & Ramp Embankment, installation of Geotextile Fabric with sand layer, Construct Bird Island Embankments with Sand Cap
ARCHITECT/ENGINEER:

U.S. Army Corps of Engineers
P.O. Box 889
Savannah, GA 31402-0889

**CONTRACTOR:**

**OVERSTREET ENGINEERING & CONSTRUCTION CO., INC.**
**4220 N. DAVIS HIGHWAY, BLD.# B**
**PENSACOLA, FLORIDA 32503**
**TEL: (850) 432-0025   FAX: (850) 432-0093**

**SUBCONTRACTOR:**

**Ryan Inc. Central**
**2700 East Racine St.**
**Janesville, WI 53545**

**Phone (608) 754-2291**

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 52 0 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

2

# ARTICLE 2
## SUBCONTRACT PRICE

As full compensation for performance of the Subcontract, Contractor agrees to pay Subcontractor in current funds the Subcontract price for the satisfactory performance of the Subcontract Work, in the manner described below, subject to all applicable provisions of the Subcontract:

(a)    the firm fixed-price of  $ 1,505,305.00; In words One Million Five Hundred Five Thousand Three Hundred Five dollars and 00/100. subject to additions and deductions as provided for in the Subcontract Documents; and

(b)    Subcontract Attachment "Exhibit B", Schedule of Values, including unit prices.

The firm fixed-price rate is hereinafter referred to as the "Subcontract Price."

# ARTICLE 3
## SUBCONTRACT DOCUMENTS

The Subcontract Documents consist of this Subcontract Agreement No. **901-C-01** and the following listed documents, schedules and attachments which are all incorporated by reference and made a part hereof *(List applicable Subcontract Documents including special conditions, general conditions, specifications, drawings, addenda, modifications, exercised alternates ,schedules, attachments, the Contract and/or other documents. Identify, with general description, sheet numbers and latest date including revisions.)*
*The Prime Contract, sections 00100-Instructions, Conditions, and Notice to Offerors, 00600-Representations and Certifications, 00700-Contract Clauses, 00800-Special Contract Requirements , Applicable Davis-Bacon Wage Determination  and Specification Divisions One and Two. The Subcontract Agreement shall also incorporate Attachment "Exhibit A-Scope of Work", Attachment "Exhibit B- Schedule of Values and Unit Prices" and Attachment "Exhibit C-Subcontractor Instructions and Procedures". The Subcontract Agreement shall incorporate the specifications and drawings, including Specification Divisions One and Two, amendments No. 1 through No.4 and the following drawings: G-1, G-2 & G-3, D-1 through D-29,S-1 through S-18, B-1 through B-5 (57 sheets).*
3.2 The Subcontract Documents which are binding on the Subcontractor are set forth in Paragraph 3.1. The Contractor shall make available to the Subcontractor, prior to the execution of the Subcontract Agreement, copies of the Subcontract Documents to which the Subcontractor will be bound. The Subcontractor similarly shall make copies of applicable portions of the Subcontract Documents available to its proposed subcontractors and suppliers. Nothing herein shall prohibit the Subcontractor from obtaining copies of the Subcontract Documents from the Contractor at any time after the Subcontract Agreement is executed. Where any provision of the documents listed in Article 3 hereof, is inconsistent with a provision of this Subcontract Agreement, this Subcontract Agreement shall govern. Nothing in the Subcontract Documents shall be construed to create a contractual relationship between persons or entities other than the Contractor and Subcontractor.

# ARTICLE 4
## SCOPE OF SUBCONTRACT WORK

4.1   The Contractor has retained the Subcontractor to provide the labor, materials, equipment and services referred to herein, and to perform the Subcontract Work as an independent contractor. The Subcontractor shall perform such work (hereinafter called the "Subcontract Work") under the general direction of the Contractor and in accordance with this Subcontract.

4.2   The scope of the Subcontract Work shall consist of all work necessary or incidental to complete the **Disposal Area Improvements and Weir Replacement, Disposal Area 12A,  Savannah Harbor, Georgia** work for the Project in accordance with and reasonably inferable from the Subcontract Documents as being necessary to produce the intended results and as more particularly, though not exclusively, specified in: The afore mentioned Contract Drawings, Documents and Specifications with the following addition or deletions: Attachment "Exhibit A-Scope of Work" is hereby incorporated into this subcontract agreement. The scope of work shall consist of  dewatering and maintaining borrow harvesting area, cut haul and placement of fill to construct dike embankments, bird island embankments, placement of geotextile fabric and sand cushion, and fine grading and final clean-up.
4.3   **TEMPORARY SERVICES** The Contractor will provide to the Subcontractor the following temporary services at the Project site during the performance of this Subcontract at no charge to the Subcontractor:
Limited to those areas or utilities and/or services as provided by the owner, if any, specifically indicated in  the Contract Documents.
Subcontractor shall coordinate and provide for any temporary services necessary or required to perform the Subcontract work.

4.4   **OTHER SPECIAL PROVISIONS** *(Insert here any special provisions required by this Subcontract.)*
The subcontractor shall comply with *Section 00100-Instructions, Conditions, and Notice to Offerors, 00600-Representations and Certifications, 00700-Contract Clauses, 00800-Special Contract Requirements (including Attachment No. 1 to Section 00800), Applicable Davis-Bacon Wage Determination, Attachment "Exhibit A-Scope of Work", Attachment "Exhibit B- Schedule of Values and Unit Prices" and Attachment "Exhibit C-Subcontractor Instructions and Procedures".*

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994,
The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

3

# ARTICLE 5
## SURETY BONDING

**5.1  COPY OF CONTRACTOR BONDS** The Subcontractor is entitled to receive from the Contractor, upon request, copies of any payment and performance bonds furnished by the Contractor for the Project.

**5.2  SUBCONTRACTOR BONDS**
5.2.1      The parties may agree that the Subcontractor shall furnish to the Contractor, as the named Oblige, appropriate surety bonds to secure the faithful performance of the Subcontract Work and to satisfy all Subcontractor payment obligations arising there under. The Subcontractor surety bond requirements, if any applicable to this Subcontract are as follows:

**5.2  SUBCONTRACT BONDS**

Subcontractor Performance Bond (*check appropriate box*)
■ Required    ☐ Not Required

Subcontractor Payment Bond    (*check appropriate box*)
■ Required    ☐ Not Required

5.2.2      If a performance or payment bond, or both, are required of the Subcontractor under this Subcontract, then said bonds shall be in the full amount of the Subcontract Price, unless otherwise specified herein, and said bonds shall be in a form and by a surety mutually agreeable to the Contractor and Subcontractor.
5.2.3      The Subcontractor shall be reimbursed, without retainage, for the cost of any required performance or payment bonds simultaneously with the first progress payment hereunder.
The reimbursement amount for the Subcontractor bonds shall not exceed the actual bond cost of the Subcontract Price, which sum is included in the Subcontract Price.
5.2.4 In the event the Subcontractor shall fail to promptly provide any required bonds, the Contractor may terminate this Subcontract and enter into a subcontract for the balance of the Subcontract Work with another subcontractor. All Contractor costs and expenses incurred by the Contractor as a result of said termination shall be paid by the Subcontractor.

# ARTICLE 6
## PERFORMANCE OF WORK

**6.1      DATE OF COMMENCEMENT**  The Date of Commencement is the effective date of this Subcontract Agreement as First Written above unless otherwise set forth below: (*insert here any special provisions concerning Notices to Proceed and the Date of Commencement*)
The Notice to Proceed was received and acknowledged on ~~December 19, 2000.~~  11/12/01   MJR
**6.2      SCHEDULE OF WORK** In a timely fashion, the Subcontractor shall provide the Contractor with any scheduling information proposed by the Subcontractor for the Subcontract Work. In consultation with the Subcontractor, the Contractor shall prepare the schedule for performance of the Contract (hereinafter called the "Schedule of Work") and shall revise and update such schedule, as necessary, as the work progresses. Both the Contractor and the Subcontractor shall be bound by the Schedule of Work. The Schedule of Work and all subsequent changes and additional details thereto shall be submitted to the Subcontractor promptly and reasonably in advance of the required performance. The Contractor shall have the right to determine and, if necessary, change the time, order and priority in which the various portions of the work shall be performed and all other matters relative to the timely and orderly conduct of the Subcontract Work.
**6.3      SUBCONTRACT PERFORMANCE** The Subcontractor shall use its best care, skill and diligence in supervising and directing the Subcontract Work. The Subcontractor shall have responsibility and control over the performance of the Subcontract Work, including the construction methods, techniques, means and sequences for coordinating and completing the various portions of the Subcontract Work, unless the Subcontract gives other specific instructions concerning these matters.
**6.4      USE OF CONTRACTOR'S EQUIPMENT** The Subcontractor, its agents, employees, subcontractors or suppliers shall use the Contractor's equipment only with the express written permission of the Contractor's designated representative and in accordance with Contractor's terms and conditions for such use.
**6.5      SUBCONTRACT TIME** The Subcontract Work shall be substantially completed  300 days  Days from the Date of the Notice to Proceed, or on or before , subject to adjustments in the Subcontract Time as provided for in the Subcontract Documents. The Subcontract Time includes time for all work performed under the prime contract, including the under-drain system. Therefore, the Subcontractors work must be coordinated with the Contractor and other Subcontractors to ensure proper scheduling and sequencing of the work and timely completion of the Contract.
**6.6      TIME IS OF THE ESSENCE** Time is of the essence for both parties, and they mutually agree to see to the performance of their respective work and the work of their subcontractors and suppliers so that the entire Project may be completed in accordance with the Contract and the Schedule of Work.

# ARTICLE 7
## SUBCONTRACT INTERPRETATION

**7.1  INCONSISTENCIES AND OMISSIONS** Should inconsistencies or omissions appear in the Subcontract Documents, it shall be the duty of the Subcontractor to so notify the Contractor in writing within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of said notice, the Contractor shall instruct the Subcontractor as to the measures to be taken and the Subcontractor shall comply with the Contractor's instructions. If the Subcontractor performs work knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without notice to the Contractor and advance approval by appropriate authorities, including the Contractor, then the Subcontractor shall assume full responsibility for such work and shall bear all associated costs, charges, fees and expenses necessarily incurred to remedy the violation.
**7.2  LAW AND EFFECT** This Subcontract shall be governed by the law of the State in which the Project is located.
7.3  **SEVERABILITY AND WAIVER** The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right as respects further performance.

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

4

**7.4  ATTORNEYS' FEES** Should either party employ an attorney to institute suit or demand arbitration to enforce any of the provisions hereof, to protect its interests in any manner arising under this Subcontract, or to recover on a surety bond furnished by a party to this Subcontract, the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, charges, and expenses expended or incurred therein.

**7.5  TITLES** The titles given to the Articles of this Sub contract Agreement are for ease of reference only and shall not be relied upon or cited for any other  purpose.

**7.6  ENTIRE AGREEMENT** This Subcontract is solely for the benefit of the signatories hereto and represents the entire and integrated agreement between the parties hereto and, unless specifically referenced herein, supersedes all prior negotiations, representations, or agreements, either written or oral.

## ARTICLE 8
## CONTRACTOR'S OBLIGATIONS

**8.1  AUTHORIZED REPRESENTATIVE** The Contractor shall designate one or more persons who shall be the Contractor's authorized representative(s) on-site and off-site. Such authorized representative(s) shall be the only person(s) the Subcontractor shall look to for instructions, orders and/or directions, except in an emergency.

**8.2  STORAGE** Unless otherwise specified in Article 4, the Contractor shall make available to the Subcontractor suitable and reasonable areas for storage of the Subcontractor's material and equipment during performance of the Subcontract Work. Unless otherwise agreed upon, the Contractor shall reimburse the Subcontractor for the additional costs of having to relocate such storage areas at the direction of the Contractor.

**8.3  TIMELY COMMUNICATIONS** The Contractor, with reasonable promptness, shall transmit to the appropriate parties all submittals, transmittals, and written approvals relating to the Subcontract Work. Unless otherwise specified in the Subcontract Documents, communications by and with the Subcontractor's subcontractors, material men and suppliers shall be through the Subcontractor.

**8.4  ADDITIONAL SERVICES RENDERED OR MATERIALS FURNISHED** The Contractor agrees that, except as otherwise provided in this Subcontract, no claim for additional services rendered or materials furnished to the Subcontractor shall be valid unless the Contractor gives the Subcontractor:

    (a)    notice prior to the furnishing of the services and/or materials, except in an emergency affecting the safety of persons or property;

    (b)    written notice of claim within seven (7) calendar days of first rendering such services or furnishing such materials; and

    (c)    written compilations of the charges relating to such services or materials no later than the tenth (10th) day of the calendar month following that in which the services are rendered or materials furnished.

**8.5  LAYOUT RESPONSIBILITY** The Subcontractor shall lay out its work from Government-established base lines and bench marks indicated on the drawings, and shall be responsible for all measurements in connection with the layout. The Subcontractor shall furnish, at its own expense, all stakes, templates, platforms, equipment, tools, materials and labor required to layout any part of the work. The Subcontractor shall be responsible for executing the work to the lines and grades that may be established or indicated by the Contracting Officer. The Subcontractor shall also be responsible for maintaining and preserving all stakes and other marks established by the Contracting Officer until authorized to remove them.

**8.6  OWNER ABILITY TO PAY** The Subcontractor shall have the right to receive from the Contractor such information as the Contractor has obtained relative to the Owner's financial ability to pay for the Contract Work.

## ARTICLE 9
## SUBCONTRACTOR'S OBLIGATIONS

**9.1  RESPONSIBILITIES** The Subcontractor shall furnish all of the labor, materials, equipment, and professional services, including, but not limited to, competent supervision, shop drawings, samples, tools, and support equipment as is necessary for the proper performance of the Subcontract Work in accordance with and reasonably inferable from the Subcontract Documents. The Subcontractor shall provide to the Contractor a list of its proposed subcontractors and suppliers, and be responsible for taking field dimensions, providing tests, ordering of materials and all other actions as required to perform the Subcontract Work and to comply with the Schedule of Work.

**9.2  SUBCONTRACTOR'S OBLIGATIONS FOR SITE VISITATION** The Subcontractor acknowledges that it has visited the Project site and visually inspected the general and local conditions which could affect the Subcontract Work. Any failure of the Subcontractor to reasonably ascertain from a visual inspection of the site, the general and local conditions which could affect the Subcontract Work, will not relieve the Subcontractor from its responsibility to properly complete the Subcontract Work without additional expense to the Contractor.

**9.3  SHOP DRAWINGS, SAMPLES, PRODUCT DATA AND MANUFACTURERS' LITERATURE**

**9.3.1**  The Subcontractor promptly shall submit for approval to the Contractor all shop drawings, samples, product data, manufacturers' literature and similar submittals required by the Subcontract Documents. The Subcontractor shall be responsible to the Contractor for the accuracy and conformity of its submittals to the Subcontract Documents. The Subcontractor shall prepare and deliver its submittals to the Contractor in a manner consistent with the Schedule of Work and in such time and sequence so as not to delay the Contractor or others in the performance of the Contract work. The approval of any Subcontractor submittal shall not be deemed to authorize deviations, substitutions or changes in the requirements of the Subcontract Documents unless express written approval is obtained from the Contractor and Owner authorizing such deviation, substitution or change. In the event that the Subcontract Documents do not contain submittal requirements pertaining to the Subcontract Work, the Subcontractor agrees upon request to submit in a timely fashion to the Contractor for approval any shop drawings, samples, product data, manufacturers' literature or similar submittals as may reasonably be required by the Contractor, Owner or Architect.

**9.3.2** The Contractor, Owner, and Architect are entitled to rely on the accuracy and completeness of any professional certifications required by the Subcontract Documents concerning the performance criteria of systems, equipment or materials, including all calculations relating thereto and any governing performance requirements.

**9.4 COORDINATION AND COOPERATION**

    The Subcontractor shall:

    (a)    cooperate with the Contractor and all others whose work may interfere with the Subcontract Work;

    (b)    specifically note and immediately advise the Contractor of any interference with the Subcontract Work; and

    (c)    participate in the preparation of coordination drawings and work schedules involving the Subcontract Work.

**9.5 AUTHORIZED REPRESENTATIVE** The Subcontractor shall designate one or more persons who shall be the authorized Subcontractor's representatives) on-site and off-site. Such authorized representatives) shall be the only persons) to whom the Contractor shall issue instructions, orders or directions, except in an emergency.

**9.6 COMMUNICATIONS** Unless otherwise provided in the Subcontract Documents, Subcontractor communications by and with the Owner, Architect, separate contractors and/or other subcontractors and suppliers of Contractor, regardless of tier, shall be through the Contractor.

**9.7 TESTS, INSPECTIONS AND SURVEY** The Subcontractor shall arrange and Schedule all required tests, approvals and inspections of the Subcontract Work or portions thereof at appropriate times so as not to delay the progress of the work. The Subcontractor shall give proper written notice to all required parties of such tests, approvals and inspections. The Subcontractor shall bear all expenses associated with tests, inspections and approvals required of the Subcontractor by the Subcontract Documents which, unless otherwise agreed to, shall be conducted by an independent testing laboratory or entity approved by the Contractor and Owner. Required certificates of testing, approval or inspection shall, unless otherwise required by the Subcontract Documents, be secured by the Subcontractor and promptly delivered to the Contractor.

**9.8 WORKMANSHIP** Every part of the Subcontract Work shall be executed in accordance with the Subcontract Documents in a workmanlike and substantial manner. All materials used in the Subcontract Work shall be furnished in sufficient quantities to facilitate the proper and expeditious execution of the work, and shall be new except such materials as may be expressly provided in the Subcontract Documents to be otherwise.

**9.9 MATERIALS FURNISHED BY OTHERS** In the event the scope of the Subcontract Work includes installation of materials or equipment furnished by others, it shall be the responsibility of the Subcontractor to examine the items so provided and thereupon handle, store and install the items, unless otherwise provided in the Subcontract Documents, with such skill and care as to ensure a satisfactory and proper installation. Loss or damage due to acts of the Subcontractor shall be deducted from any amounts due or to become due the Subcontractor under this Subcontract.

**9.10 SUBSTITUTIONS** No substitutions shall be made in the Subcontract Work unless permitted in the Subcontract Documents and only then upon the Subcontractor submitting the information in a timely manner and receiving first, all approvals required under the Subcontract Documents for substitutions.

**9.11 WARRANTY** The Subcontractor warrants its work against all deficiencies and defects in materials and/or workmanship and as called for in the Subcontract Documents.

The Subcontractor agrees to satisfy such warranty obligations which appear within the warranty period established in the Subcontract Documents without cost to the Owner or the Contractor.

Unless otherwise specified in the Subcontract Documents, the Subcontractor shall warrant its work as described above for a period of one (1) year from the dates) of substantial completion of all or each designated portion of the Subcontract Work or acceptance or use by the Contractor or Owner of each designated area, system, equipment and/or item, whichever is sooner.

The Subcontractor further agrees to furnish any special warranties that shall be required in accordance with the Subcontract Documents for the Subcontract Work prior to final payment.

**9.12 UNCOVERING/CORRECTION OF WORK**

**9.12.1 UNCOVERING OF WORK** If required in writing by the Contractor, the Subcontractor must uncover any portion of the Subcontract Work which has been covered by the Subcontractor in violation of the Subcontract Documents or contrary to a directive issued to the Subcontractor by the Contractor. Upon receipt of a written directive from the Contractor, the Subcontractor shall uncover such work for the Contractor's or Owner's inspection and then restore the uncovered work to its original condition at the Subcontractor's time and expense.

**9.12.2** The Contractor may direct the Subcontractor to uncover portions of the Subcontract Work for inspection by the Owner or Contractor at any time. The Subcontractor is required to uncover such work whether or not the Contractor or Owner had requested to inspect the work prior to it being covered. Except as provided in paragraph 9.12.1, the Subcontract shall be adjusted by change order for the cost and time of uncovering and restoring any work which is uncovered for inspection and proves to be installed in accordance with the Subcontract Documents, provided the Contractor had not previously instructed the Subcontractor to leave the work uncovered. If the Subcontractor uncovers work pursuant to a directive issued by the Contractor, and such work upon inspection does not comply with the Subcontract Documents, then the Subcontractor shall be responsible for all costs and time of uncovering, correcting and restoring the work so as to make it conform to the Sub contract Documents. If the Contractor or some other entity for which the Subcontractor is not responsible, caused the nonconforming condition, the Contractor shall be required to adjust the Subcontract by change order for all such costs and time.

**9.12.3 CORRECTION OF WORK** The Subcontractor is required to correct in a timely fashion any Subcontract Work rejected by the Contractor or Owner for failing to comply with the Subcontract Documents whether observed prior to the commencement of the warranty periods) or during the warranty period(s) established under Paragraph 9.11. The Subcontractor shall correct at its own cost and time and bear the expense of additional services for any nonconforming Subcontract Work for which it is responsible.

**9.13 CLEANUP** The Subcontractor shall follow the Contractor's cleanup directions, and

(a)    at all times keep the building and premises free from debris resulting from the Subcontract Work; and

(b)    broom clean each work area prior to discontinuing work in each area. If the Subcontractor fails to immediately commence compliance with cleanup duties within twenty-four (24) hours after written notification from the Contractor of noncompliance, the Contractor may implement appropriate cleanup measures without further notice and deduct the cost thereof from any amounts due or to become due the Subcontractor under this Subcontract.

**9.14 SAFETY OF PERSONS AND PROPERTY**

**9.14.1** The Subcontractor is required to perform the Subcontract Work in a safe and reasonable manner. The Subcontractor shall seek to avoid injury, loss or damage to persons or property by taking reasonable steps to protect:

(a)    employees and other persons at the site;

(b)    materials and equipment stored at the site or at off-site locations for use in performance of the Contract work; and

(c)    all property and structures located at the site and adjacent to work areas, whether or not said property or structures are part of the Project or involved in the Contract work.

**9.14.2** The Subcontractor shall give all required notices and comply with all applicable rules, regulations, orders and other lawful requirements established to prevent injury, loss or damage to persons or property.

**9.14.3** The Subcontractor shall implement appropriate safety measures pertaining to the Subcontract Work and the Project, including establishing safety rules, posting appropriate warnings and notices, erecting safety barriers, and establishing proper notice procedures to protect persons and property at the site and adjacent thereto from injury, loss or damage.

**9.14.4** The Subcontractor shall exercise extreme care in carrying out any Subcontract Work which involves explosive or other dangerous methods of construction or hazardous procedures, materials or equipment. At all times relevant hereto, the Subcontractor shall use properly qualified individuals or entities to carry out the Subcontract Work in a safe and reasonable manner so as to reduce the risk of personal injury or property damage.

**9.14.5** The Subcontractor is required to promptly remedy any loss or damage caused to the work, materials, equipment and property referred to in clauses 9.14.1(b) And 9.14.5(a), if said loss or damage is not covered by insurance required under the Contract, but only to the extent caused in whole or in part by the Subcontractor and/or persons or entities performing work for or on behalf of the Subcontractor, regardless of tier, who have furnished labor, materials or services relating to the Subcontract and for whose acts the Subcontractor may be liable. The Subcontractor shall not be required to remedy any loss or damage which is not attributable to the fault or negligence of the Subcontractor or of any person or entity for whose acts the Subcontractor may be liable.

**9.14.6** The Subcontractor is required to designate an individual at the site in the employ of the Subcontractor who shall act as the Subcontractor's designated safety representative with a duty to prevent accidents. Unless otherwise identified by the Subcontractor in writing to the Contractor, the designated safety representative shall be the Subcontractor's project superintendent.

**9.14.7** The Subcontractor has an affirmative duty not to overload the structures or conditions at the site and shall take reasonable steps not to load any part of the structures, or site so as to give rise to an unsafe condition or create an unreasonable risk of personal injury or property damage. The Subcontractor shall have the right to request, in writing, from the Contractor loading information concerning the structures at the site.

**9.14.8** The Subcontractor shall give prompt written notice to the Contractor of any accident involving personal injury requiring a physician's care, any property damage exceeding Five Hundred Dollars ($500.00) in value, or any failure that could have resulted in serious personal injury, whether or not such an injury was sustained.

**9.14.9** Prevention of accidents at the site is the responsibility of the Contractor, Subcontractor, and all other subcontractors, persons and entities at the site. Establishment of a safety program by the Contractor shall not relieve the Subcontractor or other parties of their safety responsibilities. The Subcontractor shall establish its own safety program implementing safety measures, policies and standards conforming to those required or recommended by governmental and quasi-governmental authorities having jurisdiction and by the Contractor and Owner, including, but not limited to, requirements imposed by the Subcontract Documents. The Subcontractor shall comply with the reasonable recommendations of insurance companies having an interest in the Project, and shall stop any part of the Subcontract Work which the Contractor deems unsafe until corrective measures satisfactory to the Contractor shall have been taken. The Contractor's failure to stop the Subcontractor's unsafe practices shall not relieve the Subcontractor of the responsibility therefore. The Subcontractor shall notify the Contractor immediately following an accident and promptly confirm the notice in writing. A detailed written report shall be furnished if requested by the Contractor. The Subcontractor shall indemnify the Contractor for fines, or penalties imposed on the Contractor as a result of safety violations, but only to the extent that such fines, or penalties are caused by the Subcontractor's failure to comply with applicable safety requirements, and then only to the extent that such fines or penalties are determined to be the Subcontractor's responsibility based upon the particular failure of compliance cited, and not due to prior or repeated safety violations by the Contractor.

**9.15 PERMITS, FEES AND LICENSES** The Subcontractor shall give adequate notices to authorities pertaining to the Subcontract Work and secure and pay for all permits, fees, licenses, assessments, inspections and taxes necessary to complete the Subcontract Work in accordance with the Subcontract Documents. To the extent obtained by the Contractor, the Subcontractor shall be compensated for additional costs resulting from laws, ordinances, rules, regulations and taxes enacted after the date of this Subcontract Agreement.

**9.16   DELEGATION OR SUBCONTRACTING OF DUTIES** The Subcontractor is prohibited from delegating, transferring, conveying, subcontracting, relinquishing or otherwise disposing of the whole or any part of its duties under this Subcontract without the prior written approval of the Contractor. The Contractor's approval shall not be unreasonably withheld. Lower-tier subcontractors and suppliers approved by the Contractor on or before the effective date of this Subcontract Agreement may be listed below:

**9.17   MATERIALS SAFETY**

**9.17.1** Should the Subcontractor encounter asbestos, polychlorinated biphenyl (PCB) or other hazardous substances at the site which potentially are harmful to persons or property, then the Subcontractor shall take all steps required by the Subcontract Documents and by law to protect persons and property from injury or damage, including stopping the Subcontract Work in the affected areas and promptly advising the Contractor in writing of the conditions encountered at the site. Should the Subcontractor be required to stop work in any area of the Project as a result of hazardous substances located at the site, then the Subcontractor shall not resume its Subcontract Work in the affected area until (a) the hazardous substances have been removed or made harmless, (b) the Contractor and Subcontractor agree in writing to commence work in all or a portion of the area, (c) the Owner orders the work to proceed in the affected area and the parties agree, or (d) the matter is resolved through arbitration as provided for in this Subcontract Agreement. The Subcontractor shall not be required to perform work in areas containing asbestos, PCBs, or any other hazardous substances defined by the Subcontract Documents, without the Subcontractor's consent.

**9.17.2**     Material Safety Data (MSDS) sheets as required by law and pertaining to materials or substances used or consumed in the performance of the Subcontract Work shall be submitted to the Contractor by the Subcontractor. MSDS sheets obtained by the Contractor from other subcontractors or sources shall be made available to the Subcontractor by the Contractor.

**ARTICLE 10**
**10.1 LABOR RELATIONS**

*(Insert here any conditions, obligations or requirements relative to labor relations and their effect on the Project. Legal counsel is recommended.)*
**This Subcontract Agreement shall incorporate the applicable Davis-Bacon Wage Decision as provided for by Section 00800-Special Contract Requirements. The Subcontractor shall be responsible for paying all of its employees no less than the wages indicated in the applicable wage decision for this Contract. Subcontractor shall submit timely Certified Payroll Reports and accompanying Statement of Compliance, within (7) seven days of payment to employee. Failure to submit timely reports shall be grounds for withholding payment.**

**ARTICLE 11**
**INSURANCE**

**11.1 SUBCONTRACTOR'S INSURANCE** Prior to start of the Subcontract Work, the Subcontractor shall procure for the Subcontract Work and maintain in force Workers' Compensation Insurance, Employer's Liability Insurance, Comprehensive Automobile Liability Insurance, Comprehensive or Commercial General Liability Insurance on an occurrence basis, and any other insurance required of Subcontractor under the Subcontract .If required by the Subcontract Documents, the Contractor, Owner and other parties as required shall be named as additional insured on each of these policies except for Workers' Compensation. The Subcontractor's insurance shall include contractual liability insurance covering the Subcontractor's obligations under this Subcontract.

**11.2   MINIMUM LIMITS OF LIABILITY** The Subcontractor's Comprehensive or Commercial General Liability Insurance and Comprehensive Automobile Liability Insurance, as required by Paragraph 11.1, shall be written with limits of liability not less than the following:

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

7

| A. | Commercial General Liability Insurance | | |
|---|---|---|---|
| | 1. | Each Occurrence Limit | $ 500,000.00 |
| | 2. | Fire Damage (any one fire) | $ 50,000.00 |
| | 3. | Med Expense (Any one person) | $ 5,000.00 |
| | 4. | Personal and Advertising Injury Limit | $ 500,000.00 |
| | 5. | General Aggregate | $ 1,000,000.00 |
| | 6. | Products/Completed Operations Aggregate | $ 1,000,000.00 |
| | 7. | Emp Ben. | $ 1,000,000.00 |
| B. | Comprehensive Automobile Liability Insurance | | |
| | 1. | Combined Single Limit Bodily Injury and Property Damage Each Occurrence | $ 500,000.00 |
| C. | Workers Compensation/Employers Liability | | |
| | 1. | Workers Compensation | Statutory Limits (unless otherwise specified) |
| | | E.L. Each Accident | $ 100,000.00 |
| | | E.L. Disease-Ea Employee | $ 100,000.00 |
| | | E.L. Disease-Policy Limit | $ 100,000.00 |

**11.3  NUMBER OF POLICIES** Comprehensive or Commercial General Liability Insurance and other liability insurance may be arranged under a single policy for the full limits required or by a combination of underlying policies with the balance provided by an Excess or Umbrella Liability Policy.

**11.4  CANCELLATION, RENEWAL OR MODIFICATION** The Subcontractor shall maintain in effect all insurance coverage required under this Subcontract at the Subcontractor's sole expense and with insurance companies mutually agreeable to the Contractor and Subcontractor.

All insurance policies shall contain a provision that the coverage afforded there under shall not be canceled or not renewed, nor restrictive modifications added, until at least thirty (30) calendar days' prior written notice has been given to the Contractor, unless otherwise specifically required in the Subcontract Documents.

Certificates of Insurance, or certified copies of policies reasonably acceptable to the Contractor, shall be filed with the Contractor prior to the commencement of the Subcontract Work.

In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Subcontract, the Contractor may purchase such coverage and charge the expense thereof to the Subcontractor, or terminate this Subcontract.

The Subcontractor shall maintain completed operations liability insurance for one year after acceptance of the Subcontract Work, substantial completion of the Project, or to the time required by the Subcontract Documents, whichever is longer. The Subcontractor shall furnish the Contractor evidence of such insurance at the time of completion of the Subcontract Work.

**11.5  WAIVER OF RIGHTS** The Contractor and Subcontractor waive all rights against each other and the Owner, the Architect, the Architect's consultants and agents or employees of any of them, separate contractors, and all other subcontractors for loss or damage to the extent covered by Builder's Risk or any other property of equipment insurance, except such rights as they may have to the proceeds of such insurance; provided, however, that such waiver shall not extend to the acts or omissions of the Architect, the Architect's consultants, and the agents or employees of any of them as listed in Paragraph 12.3.

**11.6  BUILDER'S RISK INSURANCE**

**11.6.1** Upon written request of the Subcontractor, the Contractor shall provide the Subcontractor with a copy of the Builder's Risk policy of insurance or any other property or equipment insurance in force for the Project and procured by the Contractor. The Contractor will advise the Subcontractor if a Builder's Risk policy of insurance is not in force.

**11.6.2** If the Owner or Contractor has not purchased Builder's Risk insurance for the full insurable value of the Subcontract Work, less a reasonable deductible, then the Subcontractor may procure such insurance as will protect the interests of the Subcontractor, its subcontractors and their subcontractors in the Subcontract Work, and, by appropriate Subcontract change order, the cost of such additional insurance shall be reimbursed to the Subcontractor.

**11.6.3** If not covered under the Builder's Risk policy of insurance or any other property or equipment insurance required by the Contract or Subcontract, the Subcontractor shall procure and maintain at the Subcontractor's own expense property and equipment insurance for portions of the Subcontract Work stored off the site or in transit, when such portions of the Subcontract Work are to be included in an application for payment under Article 14.

**11.7  ENDORSEMENT** If the policies of insurance refer red to in this Article require an endorsement to provide for continued coverage where there is a waiver of subrogation, the owners of such policies will cause them to be so endorsed.

## ARTICLE 12
## INDEMNIFICATION

**12.1  INDEMNIFICATION** The Subcontractor shall indemnify and hold the Contractor, Owner, Architect, their agents, consultants and employees harmless from and against all claims, losses, costs and damages, including but not limited to attorneys' fees, pertaining to the performance of the Subcontract and involving personal injury, sickness, disease, death or property damage, including loss of use of property resulting there from but not damage to the work itself, but only to the extent caused in whole or in part by the negligent acts or omissions of the Subcontractor, or any of the Subcontractors' subcontractors, suppliers, manufacturers, or other persons or entities for whose acts the Subcontractor may be liable. This indemnification agreement is binding on the Subcontractor, to the fullest extent permitted by law, regardless of whether any or all of the persons and entities indemnified hereunder are responsible in part for the claims, damages, losses or expenses for which the Subcontractor is obligated to provide indemnification. This indemnification provision does not negate, abridge or reduce any other rights or obligations of the persons and entities described herein with respect to indemnity.

**12.2  NO LIMITATION UPON LIABILITY** To the fullest extent permitted by law, in any and all claims against the Owner, the Architect, Architect's consultants, agents and employees, the Contractor (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their agents or employees, by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Article 12 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

8

**12.3   ARCHITECT EXCLUSION** The obligations of the Subcontractor under this Article 12 shall not extend to the liability of the Architect, the Architect's consultants, agents or employees of any of them, arising out of

    (a)    the preparation or approval of maps, drawings, opinions, reports, surveys, change orders, designs or specifications, or

    (b)    the giving of or the failure to give directions or instructions by the Architect, the Architect's consultants, and agents or employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

**12.4   COMPLIANCE WITH LAWS** The Subcontractor agrees to be bound by, and at its own cost, comply with all federal, state and local laws, ordinances and regulations (hereinafter collectively referred to as "laws") applicable to the Subcontract Work including, but not limited to, equal employment opportunity, minority business enterprise, women's business enterprise, disadvantaged business enterprise, and all other laws with which the Subcontractor must comply according to the Subcontract Documents. The Subcontractor shall be liable to the Contractor and the Owner for all loss, cost and expense attributable to any acts of commission or omission by the Subcontractor, its employees and agents resulting from the failure to comply therewith, including, but not limited to, any fines, penalties or corrective measures, except as provided in Subparagraph 9.14.9.

**12.5   PATENTS** Except as otherwise provided by the Subcontract Documents, the Subcontractor shall pay all royalties and license fees which may be due on the inclusion of any patented materials in the Subcontract Work. The Subcontractor shall defend all suits for claims for infringement of any patent rights arising out of the Subcontract Work, which may be brought against the Contractor or Owner, and shall be liable to the Contractor and Owner for all loss, including all costs, expenses, and attorneys' fees, but shall not be responsible for such defense or loss when a particular design, process or product of a particular manufacturer or manufacturers is required by the Subcontract Documents. However, if the Subcontractor has reason to believe that a particular design, process or product required by the Subcontract Documents is an infringement of a patent, then the Subcontractor shall promptly furnish such information to the Contractor or be responsible to the Contractor and Owner for any loss sustained as a result thereof.

### ARTICLE 13
### CHANGES, CLAIMS AND DELAYS

**13.1   CHANGES**

**13.1.1   SUBCONTRACT CHANGE** A Subcontract Change is any change in the Subcontract Work within the general scope of the Subcontract including a change in the drawings, specifications or technical requirements of the Subcontract and/or a change in the Schedule of Work affecting the performance of the Subcontract.

**13.1.2   CHANGE ORDER** When the Contractor orders in writing, the Subcontractor, without nullifying this Sub contract, shall make any and all changes in the Subcontract Work which are within the general scope of this Subcontract. Adjustments in the Subcontract Price or Subcontract Time, if any, resulting from such changes shall be set forth in a Subcontract Change Order or a Subcontract Construction Change Directive pursuant to the Subcontract Documents. No such adjustments shall be made for any changes performed by the Subcontractor that have not been ordered by the Contractor and approved by the president or vice president. A Subcontract Change Order is a written instrument prepared by the Contractor and signed by the Subcontractor stating their agreement upon the change in the scope of the Subcontract Work, adjustment in the Subcontract Price and/or Subcontract Time. A Subcontract Construction Change Directive is a written instrument prepared by the Contractor directing a change in the Subcontract Work and stating a proposed adjustment, if any, in the Subcontract Price or Subcontract Time or both. A Subcontract Construction Change Directive shall be used in the absence of agreement on the terms of a Subcontract Change Order.

**13.1.3   SUBCONTRACT CONSTRUCTION CHANGE DIRECTIVE** The Subcontractor shall comply with all Subcontract Construction Change Directives received from the Contractor and performs the required changes in the Subcontract Work in a prompt and expeditious manner. The Subcontractor shall evaluate the proposed adjustment in the Subcontract Price or Subcontract Time, if any, as set forth in the Subcontract Construction Change Directive and respond, in writing, to the Contractor stating the Subcontractor's acceptance or rejection of the proposed adjustment and the reasons therefore.

    The Subcontractor may agree to the Subcontract Construction Change Directive and the terms of the proposed adjustment, if any, by signing the Subcontract Construction Change Directive and returning it forthwith to the Contractor. Subcontract Construction Change Directives agreed to by the Subcontractor are effective immediately and become Subcontract Change Orders in accordance with their terms.

**13.1.4   ADJUSTMENT IN SUBCONTRACT PRICE** If a Subcontract Change Order or Subcontract Construction Change Directive requires an adjustment in the Subcontract Price, the adjustment shall be established by one of the following methods:

    (a)    mutual agreement on a lump sum with sufficient information to substantiate the amount;

    (b)    unit prices already established in the Subcontract Documents or if not established by the Subcontract Documents then established by mutual agreement for the adjustment;

    (c)    a mutually determined cost plus a jointly acceptable markup for overhead and profit; or

    (d)    as may otherwise be required by the Subcontract Documents.

**13.1.5   SUBSTANTIATION OF ADJUSTMENT** If the Subcontractor does not advise the Contractor promptly of the Subcontractor's agreement or disagreement with a proposed adjustment, or if the Subcontractor disagrees with the proposed method of adjustment, the method and the adjustment shall be determined by the Contractor on the basis of reasonable Subcontractor expenditures and savings attributable to the change, including, in the case of an increase in the Subcontract Price, a reasonable markup for overhead and profit. The Subcontractor may contest the reasonableness of any adjustment determined by the Contractor. Pending final determination of costs to the Contractor and/or Owner, the Subcontractor may include in Subcontractor Applications for Payment to Contractor amounts not in dispute for work performed pursuant to properly authorized Subcontract Construction Change Directives.

**13.1.6 INCIDENTAL CHANGES IN THE SUBCONTRACT WORK** The Contractor may direct the Subcontractor to perform incidental changes in the Subcontract Work which do not involve adjustments in the Subcontract Price or Subcontract Time. Incidental changes shall be consistent with the scope and intent of the Subcontract Documents. The Contractor shall initiate an incidental change in the Subcontract Work by issuing a written order to the Subcontractor. Such written orders shall be carried out promptly and are binding on the parties.

**13.2 CLAIMS**

**13.2.1 CLAIM** A claim is a demand or assertion made in writing by the Contractor or the Subcontractor seeking an adjustment in the Subcontract Price and/or Subcontract Time, an adjustment or interpretation of the Subcontract terms, or other relief arising under or relating to this Subcontract, including the resolution of any matters in dispute between the Contractor and Subcontractor in connection with the Project.

**13.2.2   CLAIMS RELATING TO THE OWNER** Subcontractor agrees to make all claims against the Contractor for which the Owner is or may be liable in the same manner and within the time limits provided in the Contract for like claims by the Contractor against the Owner and in sufficient time for the Contractor to make such claims against the Owner in accordance with the Contract. The Contractor agrees to permit the Subcontractor to prosecute a claim in the name of the Contractor for the use and benefit of the Subcontractor in the manner provided in the Contract for like claims by the Contractor against Owner. The Contractor shall make available to the Subcontractor, prior to the execution of this Subcontract Agreement, copies of all Contract provisions pertaining to claims by the Contractor against the Owner.

**13.2.3  CLAIMS RELATING TO CONTRACTOR** The Subcontractor shall give the Contractor written notice of all claims not included in Subparagraph 13.2.2 or 16.7.3 within seven (7) calendar days of the date when the Subcontractor knew of the facts giving rise to the event for which claim is made; otherwise, such claims shall not be valid.

**13.2.4  UNRESOLVED CLAIMS, DISPUTES AND OTHER MATTERS** All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor, not relating to claims included in Paragraph 12.5, shall be resolved in the manner provided in Article 15 herein.

**13.3  DELAY**

13.3.1 If the Subcontractor is delayed in the performance of the Subcontract Work for any reason beyond the Subcontractor's control, and without the Subcontractor's fault or negligence, including delays caused in whole or in part by the Contractor, Owner, Architect or any other persons, entities or events, or if the Subcontract Work is delayed by order of the Contractor, Owner or an authorized representative of either, or if the Subcontract Work is delayed for any reason or cause for which the Contractor, Owner or Architect concludes has resulted in excusable delay, then the Subcontractor is entitled to an extension of the Subcontract Time in which to complete its work. Said extension shall be set forth in a Subcontract Change Order for such time as the parties may agree is reasonable.

**13.3.2** Claims relating to time shall be made in accordance with applicable provisions of the Subcontract Documents. This Article 13 does not preclude recovery of damages for delay by either party.

**13.3.3  LIQUIDATED DAMAGES** If the Contract provides for liquidated or other damages for delay beyond the completion date set forth in the Contract, and such damages are assessed by the Owner against the Contractor, then the Contractor may assess such damages against the Subcontractor in proportion to its share of the responsibility for such delay and damage, but no more. The amount of such assessment against the Subcontractor, if any, shall not exceed the Subcontractor's proportionate share of the responsibility for such delay and damage and shall never exceed the amount assessed against the Contractor by the Owner.

Nothing in Subparagraph 13.3.3 shall limit the Contractor's right to claim all actual damages sustained by the Contractor as a result of Subcontractor delay. extension of the Subcontract Time in which to complete its work. Said extension shall be set forth in a Subcontract Change Order for such time as the parties may agree is reasonable.

**ARTICLE 14**
**PAYMENT**

**14.1.  GENERAL PROVISIONS**

**14.1.1  SCHEDULE OF VALUES** Within fourteen (14)  calendar days from the date of execution of this Subcontract Agreement, the Subcontractor shall prepare and submit to the Contractor a Schedule of Values apportioned to the various divisions or phases of the Subcontract Work. Each line item contained in the Schedule of Values shall be assigned a monetary price such that the total of all such items shall equal the Subcontract Price. The Schedule of Values shall be prepared in such detail as may be required by the Owner and, in addition thereto, the Contractor and Subcontractor may agree on the extent of the detail to be included in the Schedule of Values, which must be supported by such documents and proof as the Contractor may require.


**14.1.2  COPY OF PAYMENT REQUEST** Upon request, the Contractor shall give the Subcontractor a copy of the most current Contractor application for payment reflecting the amounts approved and/or paid by the Owner for the Subcontract Work performed to date.


**14.1.3  PAYMENT USE AND VERIFICATION** The Subcontractor is required to pay for all labor, materials and equipment used in the performance of the Subcontract Work through the most current period applicable to progress payments received from the Contractor. Reasonable evidence, satisfactory to the Contractor, may be required to show that all obligations relating to the Subcontract Work are current before releasing any payment due on the Subcontract Work. If required by the Contractor, before final payment is made for the Subcontract Work, the Subcontractor shall submit evidence satisfactory to the Contractor that all payrolls, bills for materials and equipment, and all known indebtedness connected with the Subcontract Work, have been paid or otherwise satisfied as set forth in paragraph 14.3.2.

**14.1.4  SUBCONTRACTOR ASSIGNMENT OF RECEIVABLES** The Subcontractor shall advise the Contractor prior to entering into this Subcontract Agreement of the existence of any assignments or security interests granted by the Subcontractor to any general creditor, bank, lender, surety, factor or other entity in receivables or monies that may become due the Subcontractor under this Subcontract and shall give the Contractor prompt written notice of any such assignments or security interests granted by the Subcontractor after entering into this Subcontract Agreement.

**14.1.5  PAYMENT NOT ACCEPTANCE** Payment to the Subcontractor does not constitute or imply acceptance of any portion of the Subcontract Work.

**14.2  PROGRESS PAYMENTS**

**14.2.1  APPLICATIONS** Subcontractor's applications for payment shall be itemized and supported by the Subcontractor's Schedule of Values and any other substantiating data as required in the Contract for the Contractor's payment applications. Subcontractor's applications shall be notarized if required. Subcontract payment applications may include payment requests on account of properly authorized Subcontract Construction Change Directives. The Subcontractor's progress payment application for work performed in the preceding payment period shall be submitted to the Contractor in accordance with the terms of this Subcontract Agreement for approval by the Contractor. The Contractor shall incorporate the approved amount of the Subcontractor's progress payment application into the Contractor's payment application to the Owner for the same period and submit it to the Owner in a timely fashion.

**14.2.2  PARTIAL LIEN WAIVERS AND AFFIDAVITS** As a prerequisite for payment, the Subcontractor shall provide, in a form satisfactory to the Owner and Contractor, partial lien or claim waivers in the amount of the application for payment and affidavits from the Subcontractor, and its subcontractors, materialmen and suppliers for the completed Subcontract Work. Such waivers may be conditional upon payment. In no event shall the Contractor require the Subcontractor to sign an unconditional waiver of lien or claim, either partial or final, prior to receiving payment or in an amount in excess of what it has been paid.

**14.2.3  REJECTION OF SUBCONTRACTOR'S PAYMENT APPLICATION** The Contractor may reject a Subcontractor payment application or nullify a previously approved Subcontractor payment application, in whole or in part, as may reasonably be necessary to protect the Contractor from loss or damage based upon:

(a)     the Subcontractor's repeated failure to perform the Subcontract Work as required by the Subcontract;

(b)     loss or damage arising out of or relating to the Subcontract and caused by the Subcontractor to the Owner, Contractor or others to whom the Contractor may be liable;

(c)     the Subcontractor's failure to properly pay for labor, materials, equipment or supplies furnished in connection with the Subcontract Work;

(d)     rejected, nonconforming or defective Subcontract Work which has not been corrected in a timely fashion;

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT • AGC Document No. 640/ASA Document No. 4100/ASC Form No. 52 0 1994,
The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

10

(e)    reasonable evidence of delay in performance of the Subcontract Work such that the work will not be completed within the Subcontract Time, and that the unpaid balance of the Subcontract Price is not sufficient to offset the liquidated damages or actual damages that may he sustained by the Contractor as a result of the anticipated delay caused by the Subcontractor;

(f)    reasonable evidence demonstrating that the unpaid balance of the Subcontract Price is insufficient to cover the cost to complete the Subcontract Work;

(g)    third party claims involving the Subcontractor or reasonable evidence demonstrating that third party claims are likely to be filed unless and until the Subcontractor furnishes the Contractor with adequate security in the form of a surety bond, letter of credit or other collateral or commitment which are sufficient to discharge such claims if established.

The Contractor shall give written notice to the Sub contractor, at the time of disapproving or nullifying an application for payment, of the specific reasons therefore When the above reasons for disapproving or nullifying an application for payment are removed, payment will be made for amounts previously withheld.

**14.2.4    RETAINAGE/SECURITY** The rate of retainage shall be equal to the percentage retained from the Contractor's payment by the Owner for the Subcontract Work.

If the Contract provides for a reduction of retainage based upon a percentage of completion of the Contract work, the Contractor also shall reduce the Subcontractor's retainage when the Subcontractor's approved application for payment has attained the same percentage of completion and the Contractor's retainage is reduced .If there is no provision for retainage in the Contract, or if the Subcontractor has not furnished performance & payment bonds, the Contractor may require a rate of retainage not to exceed ten (10) percent.

If the Subcontractor furnishes a bond or other security to the satisfaction of the Contractor, the rate of retainage may be set at a lower rate or zero.

**14.2.5    TIME OF APPLICATION** For each progress payment period, the Subcontractor shall submit its progress payment application to the Contractor for the Subcontract Work performed to date no later than seven (7) calendar days prior to the date that the Contractor's progress payment application is required to be submitted to the Owner under the Contract, **(on or about the 30th day of the Month)** unless otherwise agreed. To the extent allowed under Subparagraph 14.2.6 of this Subcontract Agreement, the Subcontractor may include in its progress payment applications to the Contractor materials and equipment suitably stored at the site or elsewhere for use in performance of the Subcontract Work.

**14.2.6    STORED MATERIALS AND EQUIPMENT** Unless otherwise provided in the Subcontract Documents, applications for payment may include materials and equipment not incorporated into the Subcontract Work but delivered to and suitably stored at the site. Applications for payment may include materials and equipment delivered to and suitably stored off the site, if allowed under the Contract and properly approved. Approval of payment applications for materials and equipment stored on or off the site shall be conditioned on submission by the Subcontractor of bills of sale and applicable insurance or such other procedures satisfactory to the Owner and Contractor to establish the proper valuation of the stored materials and equipment, the Owner's title to such materials and equipment, and to otherwise protect the Owner's and Contractor's interests therein, including transportation to the site.

**14.2.7    TIME OF PAYMENT** Progress payments to the Subcontractor for satisfactory performance of the Sub contract Work shall be made no later than seven (7) calendar days after receipt by the Contractor of payment from the Owner for the Subcontract Work. If payment from the Owner for such Subcontract Work is not received by the Contractor, through no fault of the Subcontractor, the Contractor will make payment to the Subcontractor within a reasonable time for the Subcontract Work satisfactorily performed.

**14.2.8    PAYMENT DELAY** If for any reason not the fault of the Subcontractor, the Subcontractor does not receive a progress payment from the Contractor within seven (7) calendar days after the time such payment is due, as defined in Subparagraph 14.2.7, or within fourteen (14) calendar days after the time payment is due from the Owner to the Contractor for such Subcontract Work as defined in the Contract, then the Subcontractor, upon giving seven (7) calendar days' written notice to the Contractor, and without prejudice to and in addition to any other legal remedies, may stop its Subcontract Work until payment of the full amount owing to the Subcontractor has been received. The Subcontract Price and Subcontract Time shall be increased by the amount of the Subcontractor's reasonable cost of shutdown, delay and start-up, which shall be effected by appropriate Subcontract Change Order.

**14.3    FINAL PAYMENT**

**14.3.1    APPLICATION** Upon acceptance of the Subcontract Work by the Contractor, and upon the Subcontractor furnishing evidence of fulfillment of the Subcontractor's obligations in accordance with the Subcontract Documents, the Contractor shall incorporate the Subcontractor's application for final payment into the Contractor's next application for payment to the Owner without delay, or notify the Subcontractor if there is a delay and the reasons therefore.

**14.3.2    REQUIREMENTS** Before the Contractor shall be required to incorporate the Subcontractor's application for final payment into the Contractor's next application for payment to the Owner, the Subcontractor shall furnish to the Contractor:

(a)    if required by the Subcontract, an affidavit that all payrolls, bills for materials and equipment, and other indebtedness connected with the Subcontract Work for which the Owner or its property or the Contractor or the Contractor's surety might in any way be liable, have been paid or otherwise satisfied;

(b)    consent of the Subcontractor's surety to final payment, if required

(c)    satisfaction of closeout procedures as may be required by the Subcontract;

(d)    certification that insurance required by the Subcontract remain in effect beyond final payment pursuant to this Subcontract Agreement is in effect and will not be canceled or allowed to expire without at least thirty (30) calendar days' written notice to the Contractor, unless a longer period is stipulated in the Subcontract Documents; and

(e)    other data if required by the Owner, such as receipts, releases, and waivers of liens effective upon payment to the extent and in such form as may be designated by the Owner. Acceptance of final payment by the Subcontractor shall constitute a waiver of claims by the Subcontractor except those previously made in writing and identified by the Subcontractor as unsettled at the time of final application for payment.

**14.3.3    TIME OF PAYMENT** Final payment of the balance due of the Subcontract Price shall be made to the Subcontractor within seven (7) calendar days after receipt by the Contractor of final payment from the Owner for such Subcontract Work.

**14.3.4 FINAL PAYMENT DELAY** If the Owner delays final payment for the Subcontract Work, or the Contractor does not receive final payment for the Subcontract Work for any cause which is not the fault of the Subcontractor, the Contractor shall promptly inform the Subcontractor in writing. The Contractor also shall diligently pursue, with the assistance of the Subcontractor, the prompt release by the Owner of the final payment due for the Subcontract Work. If final payment from the Owner for such Subcontract Work is not received by the Contractor, through no fault of the Subcontractor, the Contractor will make payment to the Subcontractor within a reasonable time

AGC/ASA/ASC STANDARD FORM CONTSTRUCTION SUBCONTRACT · AGC Document No. 640/ASA Document No. 4100/ASC Form No. 52 0 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

11

**4.3.5  LATE PAYMENT INTEREST** Progress payments or final payment due and unpaid under this Subcontract, as defined in Subparagraphs 14.2.7, 14.3.3 an 14.3.4, shall bear interest from the date payment is due at the rate provided in this Subcontract or, in the absence thereof, at the legal rate prevailing at the place of th Project. However, if the Owner fails to timely pay the Contractor as required under the Contract through no fault or neglect of the Contractor, and the Contractor fails to timely pay the Subcontractor as a result thereof, then the Contractor's obligation to pay the Subcontractor interest on corresponding payments due and unpaid under thi Subcontract shall be extinguished by the Contractor promptly paying to the Subcontractor the Subcontractor's proportionate share of the interest, if any, received by the Contractor from the Owner on such late payments.

**14.4  BOND AND MECHANIC'S LIEN RIGHTS** In the event that any applicable law, statute, regulation or bond re quires Subcontractor to take any action prior to the expiration of the reasonable time for payment referenced in Subparagraphs 14.2.7 and 14.3.4, in order to preserve or protect the Subcontractor's rights, if any, with respect to mechanic's liens or bond claims, then the Subcontractor may take that action prior to the expiration of the reasonable time for payment and such action will not be in violation of this Subcontract nor considered premature for purposes of preserving and protecting the Subcontractor's rights.

## ARTICLE 15
### DISPUTE RESOLUTION

**15.1  INITIAL DISPUTE RESOLUTION** If a dispute arises out of or relates to this Subcontract, or the breach thereof, the parties may endeavor to settle the dispute first through direct discussions. If the dispute cannot be settled through direct discussions, the parties may endeavor to settle the dispute by mediation before recourse to arbitration. Unless the parties agree otherwise, the mediation shall be conducted in accordance with the Construction Mediation Rules of the American Arbitration Association. Mediation will be commenced within the time limits for arbitration stipulated in the Subcontract Documents. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus fourteen (14) calendar days, or as otherwise provided in the Subcontract Documents. Issues to he mediated are subject to the exceptions in Paragraph 15.3 for arbitration. The location of the mediation shall be the same as the location for arbitration identified in Paragraph 15.4.

**15.2  AGREEMENT TO ARBITRATE** All claims, disputes and other matters in question arising out of, or relating to, this Subcontract, or the breach thereof, except for claims which have been waived by the making or acceptance of final payment, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect unless the parties mutually agree otherwise. Notwithstanding other provisions in this Subcontract, or choice of law provisions to the contrary, this agreement to arbitrate shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, which shall not be superseded or supplemented by any other arbitration act, statute or regulation.

**15.3  STAY OF PROCEEDINGS AND CONSOLIDATION** In the event the Contractor and Subcontractor determine that all or a portion of any claim, dispute or other matter in question between them is the responsibility in whole or in part of a person or entity who is under no obligation to arbitrate said claim, dispute or matter with Contractor and Subcontractor in the same proceeding, then the Contractor and Subcontractor may agree in writing to delay or stay any arbitration between them pending the determination, in a separate proceeding, of the responsibility and liability of said person or entity for the claim, dispute or matter involved. The Subcontractor agrees that any arbitration instituted under this Article 15 may, at the Contractor's election, be consolidated with any other arbitration proceeding involving a common question of fact or law between the Contractor and any other subcontractors) performing work in connection with the Contract.
In any dispute concerning the application of this paragraph 15.3, the question of arbitration shall be decided by the appropriate court and not by arbitration.

**15.4  NOTICE OF DEMAND** Notice of the demand for arbitration shall be filed in writing with the other party to this Subcontract and with the American Arbitration Association. The demand for arbitration shall be made as required in the Subcontract Documents or within a reasonable time after written notice of the claim, dispute or other matter in question has been given, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statutes of limitation. The location of the arbitration proceedings shall be at the office of the American Arbitration Association nearest the Project site, unless the parties agree otherwise.

**15.5  AWARD** The award rendered by the arbitrators shall be final and judgment may be entered upon it in accordance with the Federal Arbitration Act in any court having jurisdiction.

**15.6  WORK CONTINUATION AND PAYMENT** The Subcontractor shall carry on the Subcontract Work and maintain the Schedule of Work pending final resolution of a claim including arbitration, unless the Subcontract has been terminated or the Subcontract Work suspended as provided for in the Subcontract, or the parties otherwise agree in writing to a partial or total suspension of the Subcontract Work. If the Subcontractor is continuing to perform in accordance with the Subcontract, the Contractor should continue to make payments as required by the Subcontract.

**15.7  NO LIMITATION OF RIGHTS AND REMEDIES** Nothing in this Article shall limit any rights or remedies not expressly waived by the Subcontractor which the Subcontractor may have under lien laws or surety bonds.

**15.8  SAME ARBITRATORS** To the extent not prohibited by their contracts with others, the claims and disputes of the Owner, Contractor, Subcontractor and others involved with the Project, concerning a common question of fact or law, shall be heard by the same arbitrators) in a single proceeding.

## ARTICLE 16
### RECOURSE BY CONTRACTOR

**16.1  FAILURE OF PERFORMANCE**

**16.1.1  NOTICE TO CURE** If the Subcontractor refuses or fails to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work, or it fails to make prompt payment to its workers, subcontractors or suppliers, disregards laws, ordinances, rules, regulations or orders of any public authority having jurisdiction, or otherwise is guilty of a material breach of a provision of this Subcontract, the Subcontractor may be deemed in default of this Subcontract. If the Subcontractor fails within three (3) working days after written notification to commence and continue satisfactory correction of such default, with diligence and promptness, then the Contractor without prejudice to any other rights or remedies, shall have the right to any or all of the following remedies:

| | |
|---|---|
| (a) | supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the satisfactory correction of such default, which the Subcontractor has failed to complete or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorneys' fees; |
| (b) | contract with one or more additional contractors, to perform such part of the Subcontract Work as the Contractor shall determine will provide the most expeditious correction of the default and charge the cost thereof to the Subcontractor; |
| (c) | withhold payment of moneys due the Subcontractor in accordance with Subparagraph 14.2.3 of this Subcontract Agreement; and |
| (d) | in the event of an emergency affecting the safety of persons or property, the Contractor may proceed to commence and continue satisfactory correction of such default, without first giving three (3) working days' written notice to the Subcontractor, but shall give prompt written notice of such action to the Subcontractor. |

AGC/ASA/ASC STANDARD FORM CONSTRUCTION SUBCONTRACT • ACC Document No. 640/ASA Document No. 4100/ASC Form No. 520 © 1994, The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

**16.1.2   TERMINATION BY CONTRACTOR** If the Subcontractor fails to commence and satisfactorily continue correction of a default within three (3) working days after written notification issued under Subparagraph 16.1.1, then the Contractor may, in lieu of or in addition to the remedies set forth in Subparagraph 16.1.1, issue a second written notification to the Subcontractor and the Subcontractor's surety, if any. Such notice shall state that if the Subcontractor fails to commence and continue correction of the default within seven (7) working days of the second written notification, the Subcontract may be terminated and the Contractor may use any materials, implements, equipment, appliances or tools furnished by or belonging to the Subcontractor to complete the Subcontract Work. A written notice of termination shall be issued by the Contractor to the Subcontractor at the time the Subcontract is terminated.

The Contractor also may furnish those materials, equipment and/or employ such workers or subcontractors as the Contractor deems necessary to maintain the orderly progress of the work.

All costs incurred by the Contractor in performing the Subcontract Work, including reasonable overhead, profit and attorneys' fees, shall be deducted from any moneys due or to become due the Subcontractor under this Subcontract. The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Price. If the unpaid balance of the Subcontract Price exceeds the expense of finishing the Subcontract Work, such excess shall be paid to the Subcontractor.

**16.1.3   USE OF SUBCONTRACTOR'S EQUIPMENT** If the Contractor performs work under this Article, or subcontracts such work to be so performed, the Contractor and/or the persons to whom work has been subcontracted shall have the right to take and use any materials, implements, appliances or tools furnished by, belonging to or delivered to the Subcontractor and located at the Project for the purpose of completing any remaining Subcontract Work. Immediately upon completion of the Subcontract Work, any remaining materials, implements, or surplus documents not consumed or incorporated in performance of the Subcontract Work, and furnished by, belonging to, or delivered to the Project by or on behalf of the Subcontractor, shall be returned to the Subcontractor in substantially the same condition as when they were taken, normal wear and tear excepted.

**16.2   BANKRUPTCY**

**16.2.1   TERMINATION ABSENT CURE** If Subcontractor files a petition under the Bankruptcy Code, this Subcontract shall terminate if the Subcontractor or the Subcontractor's trustee rejects the Subcontract or, if there has been a default, the Subcontractor is unable to give adequate assurance that the Subcontractor will perform as required by this Subcontract or otherwise is unable to comply with the requirements for assuming this Subcontract under the applicable provisions of the Bankruptcy Code.

**16.2.2   INTERIM REMEDIES** If the Subcontractor is not performing in accordance with the Schedule of Work at the time a petition in bankruptcy is filed, or at any subsequent tune, the Contractor, while awaiting the decision of the Subcontractor or its trustee to reject or to assume this Subcontract and provide adequate assurance of its ability to perform hereunder, may avail itself of such remedies under this Article as are reasonably necessary to maintain the Schedule of Work.

The Contractor may offset against any sums due or to become due the Subcontractor under this Subcontract all costs incurred in pursuing any of the remedies provided hereunder, including, but not limited to, reasonable overhead, profit and attorneys' tees.

The Subcontractor shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Price.

**16.3   STOPPAGE OF WORK** Should the Owner order the Contractor in writing to stop the performance of the Contract or any portion which affects the Subcontract Work due to any act or omission of the Contractor, or any other person or entity for whose acts or omissions the Contractor may be liable, then the Contractor shall so notify the Subcontractor in writing and upon written notification the Subcontractor shall stop that portion of the Subcontract Work as ordered by the Contractor.

**16.4   SUSPENSION BY OWNER FOR CONVENIENCE**

16.4.1 Should the Owner order the Contractor in writing to suspend, delay, or interrupt the performance of the Contract or any part which affects the Subcontract Work for such period of time as may be determined to be appropriate for the convenience of the Owner, and not due to any act or omission of the Contractor, or any other person or entity for whose acts or omissions the Contractor maybe liable, then the Contractor shall so notify the Subcontractor in writing and, upon written notification, the Subcontractor shall immediately suspend, delay or interrupt that portion of the Subcontract Work as ordered by Contractor.

16.4.2 In the event of an Owner suspension, delay or interruption for convenience as described in Subparagraph 16.4.1, the Contractor's liability to the Subcontractor for any damages caused by said order, including any claims for adjustments in the Subcontract Price and/or Subcontract Time, shall be extinguished by the Contractor pursuing said damages and claims against the Owner, on the Subcontractor's behalf, and by awarding and paying over to the Subcontractor any additional time and/or money obtained from the Owner on the Subcontractor's behalf, if accepted by the Subcontractor.

16.4.3 If the Subcontractor's damages and claims resulting from an Owner suspension, delay or interruption for convenience as described in Subparagraph 16.4.1, cannot be resolved through negotiation under the Contract, then the Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of said damages and claims against the Owner through mediation, arbitration and/or litigation, and to permit the Subcontractor to prosecute said damages and claims, in the name of the Contractor and for the use and benefit of the Subcontractor. The Contractor's liability to the Subcontractor for any damages and claims caused by the Owner suspension, delay or interruption for convenience shall be fully extinguished by the Contractor awarding and paying over to the Sub contractor any additional time and/or money obtained from the Owner on the Subcontractor's behalf through the conclusion of the mediation, arbitration, and/or litigation process.

**16.5   TERMINATION BY OWNER**

16.5.1 Should the Owner terminate its Contract with the Contractor, or any part which includes the Subcontract Work, the Contractor shall so notify the Subcontractor in writing within three (3) calendar days of the termination and, upon written notification, this Subcontract shall be terminated and the Subcontractor shall immediately stop the Subcontract Work, follow the Contractor's instructions regarding shutdown and termination procedures, and mitigate all costs. 16.5.2 In the event that the Owner terminates its Contract with the Contractor for the convenience of the Owner, and not due to any act or omission of the Contractor, then the Contractor's liability to the Subcontractor for any damages incurred or claims resulting from the Owner termination, shall be extinguished by the Contractor pursuing said damages and claims against the Owner on the Subcontractor's behalf, and by paying over to the Subcontractor any additional money obtained by the Contractor from the Owner on the Subcontractor's behalf, if accepted by the Subcontractor.

16.5.3 In the event that the Owner terminates its Contract with the Contractor for the convenience of the Owner, and the Subcontractor's damages and claims cannot be resolved through negotiation in accordance with the Contract or otherwise, then the Contractor agrees to cooperate with the Subcontractor, at the Subcontractor's expense, in the prosecution of said damages and claims against the Owner through mediation, arbitration and/or litigation, and to permit the Subcontractor to prosecute said damages and claims, in the name of the Contractor and for the use and benefit of the Subcontractor. The Contractor's liability to the Subcontractor for any damages and claims caused by the Owner termination for convenience shall be fully extinguished by the Contractor awarding and paying over to the Subcontractor any additional time and/or money obtained from the Owner on the Subcontractor's behalf through the conclusion of the mediation, arbitration and/or litigation process.

**16.6    CONTINGENT ASSIGNMENT OF SUBCONTRACT** The Contractor may assign this Subcontract to the Owner if required under the Contract. The assignment shall be effective only when the Owner: (a) has terminated the Contract for cause, and (b) has accepted the assignment by notifying the Subcontractor in writing. The contingent assignment is subject to the prior rights of a surety that may be obligated under the Contractor's bond, if any. Subcontractor hereby consents to such assignment and agrees to be bound to the Owner, as assignee, by the terms of this Subcontract.

**16.7    SUSPENSION BY CONTRACTOR FOR CONVENIENCE**

16.7.1 The Contractor may order the Subcontractor in writing to suspend, delay or interrupt all or any part of the Subcontract Work for such period of time as may be determined to be appropriate for the convenience of the Contractor. The short/incidental stoppage of the Subcontract Work, shall not be deemed a suspension, delay or interruption of work.

16.7.2 The Subcontractor shall notify the Contractor in writing within fourteen (14) calendar days after receipt of the Contractor's order of the effect of such order upon the Subcontract Work. The Subcontract Price and/or Subcontract Time shall be adjusted by Subcontract Change Order for any increase in the time and/or cost of performance of this Subcontract caused by such suspension, delay or interruption.

16.7.3    No claim under this Paragraph 16.7 shall be allowed for any costs incurred more than fourteen (14) calendar days prior to the Subcontractor's notice to the Contractor.

16.7.4 The Subcontract Price shall not be adjusted under this Paragraph 16.7 for any suspension, delay or interruption to the extent that the performance of the Subcontract is, was or would have been so suspended, delayed or interrupted by the fault or neglect of the Subcontractor, by a cause for which the Subcontractor is responsible, or by a cause for which the Subcontractor is entitled only to a time extension under this Subcontract.

## ARTICLE 17
### TERMINATION BY SUBCONTRACTOR

If the Subcontract Work has been stopped for thirty (30) calendar days because the Subcontractor has not received progress payments as required under Article 14, or has been abandoned or suspended for an unreasonable period of time not due to the fault or neglect of the Subcontractor, then the Subcontractor may terminate this Subcontract upon giving the Contractor seven (7) calendar days written notice. Upon such termination, Subcontractor shall be entitled to recover from the Contractor payment for all Subcontract Work satisfactorily performed but not yet paid for, including reasonable overhead, profit and damages. However, if the Owner has not paid the Contractor for the satisfactory performance of the Subcontract Work through no fault or neglect of the Contractor, and the Subcontractor terminates the Subcontract under this Article because it has not received corresponding progress payments as required under Article 14, then the Subcontractor shall be entitled to recover from the Contractor, within a reasonable period of time following termination, payment for all Subcontract Work satisfactorily performed but not paid for, including reasonable overhead and profit thereon. The Contractor's liability for any other damages claimed by the Subcontractor under such circumstances shall be extinguished by the Contractor pursuing said damages and claims against the Owner, on the Subcontractor's behalf, in the manner provided for in Subparagraphs 16.5.2 and 16.5.3 of this Subcontract Agreement.

**This Agreement is entered into as of the date first written above.**

ATTEST : _____

OVERSTREET ENGINEERING & CONSTRUCTION CO., INC.

BY: _____

PRINT NAME: _Benjamin J. Overstreet_

PRINT TITLE: _President_

ATTEST : _____

SUBCONTRACTOR : _Ryan Incorporated Central_

BY: _____

PRINT NAME: _Matthew J. Ryan_

PRINT TITLE: _Executive Vice President_

AGC/ASA/ASC STANDARD FORM CONSTRUCTION SUBCONTRACT ACC Document No. 640/ASA Document No. 4100/ASC Form No. 520 1994,
The Associated General Contractors of America/American Subcontractors Association, Inc./Associated Specialty Contractors

14

**Exhibit A**
**Ryan Central**
**Subcontract 901-01**
**Scope Of Work**

The Subcontractor will provide all necessary labor, materials, equipment, and services to accomplish the following work. This includes but is not limited to: applicable licenses, permits, re-testing, supervision, training, preparing the following submittals:1) Dewatering Plan 2) Excavation & Disposal Plan 3) Work Plan 4) List of Personnel to be Involved in the Project 5) List of Equipment to be used in the Project 6) Survey Data to be used of As Built Drawings. The Subcontractor is bound to all requirements of the prime contract to the same extent as the Contractor.

It is the intent of this Subcontract to establish scope of work as required under the contract to effect the dike raising and related work.

The following items are included to better clarify the Scope of Work. Nothing in these clarifications limits the Scope of Work.

1. Initial staking of berms, monthly quantity surveys, and final surveying including "topo" of borrow area to insure positive drainage.
2. Construct Embankments, Berms and Ramps to the lines and grades indicated on the contract drawings including fine grading to a smooth surface ready for Turf installation.
3. Construct Bird Island Embankments and Sand Caps
4. Install Separation/Filtration Geotextile materials. (including cut, haul, place sand layer) Geotextile fabric will be supplied by the Contractor with a waste factor of 5% ( not including laps) that includes repair materials for tears. The Contractor reserves the right to deduct the cost of additional materials that are needed due improper handling or installation by the Subcontractor from the Subcontract amount at the rate of $ 0.58 / SY plus tax.
5. Cooperate with the installation of the Subdrainage System.
6. Leave entire area from which borrow material is removed, such that positive drainage to the weir structures is ensured.

The Subcontractor will maintain a clean & safe job site at all times. This includes maintaining dumpsters for debris disposal, chemical toilets and potable drinking water for employees working on site.

Performance Times: Work including submittals will be performed in accordance with the CPM for the project. The CPM will be maintained by the Contractor and will be available to the Subcontractor at all times upon request.

2

The Subcontractor's attention is directed to the requirement in the contract to comply with the "Buy American Act".

**SAVANNAH AREA IMPROVEMENTS AND WEIR REPLACEMENT DISPOSAL AREA A**
**RYAN CENTRAL SCHEDULE OF VALUES**
**SUBCONTRACT 901-C-01**
**Exhibit B**

| ITEM NO. | DESCRIPTION | QUANTITY | UNIT | UNIT PRICE | EXTENDED |
|---|---|---|---|---|---|
| 1 | Performance & Payment Bond | 1.00 | LS | $12,000.00 | $12,000.00 |
| 2 | Construct Dike & Ramp Embankment | 745,000.00 | CY | $1.64 | $1,221,800.00 |
| | Dike & Ramp Cut/Haul/Place/Grade | | | | |
| | Haul Road Construction & Removal | | | | |
| | Dewatering | | | | |
| | Mobilization & Demobilization | | | | |
| | Finish Grading - Dike & Ramps | | | | |
| | Surveying : Initial & Periodic Staking & Monthly Quantity Survey | | | | |
| 3 | Unload & Install Geotextile For Embankment Construction | 128,000.00 | SY | $0.45 | $57,600.00 |
| 4 | Construct Bird Island Embankment | XX | XX | | |
| 5 | Cut, Haul, Place Sand Cap | 14,420.00 | CY | $5.54 | $79,886.00 |
| 6 | First 105,000 CY | 90,580.00 | CY | $1.24 | $112,319.20 |
| 7 | All Over 105,000 CY | 17,500.00 | CY | $1.24 | $21,700.00 |
| | | | | Total * | $1,505,305.20 |

* Quantities are in accordance with the etimated quantities identified in the Prime Contract. The Subcontractor will be paid to the same extent as the Prime Contractor. Progress payments will be based upon monthly quantity surveys conducted by the Subcontractor and final payment will be based on the quantities generated from the "Final Survey" by the Government.